Mr. Coughlin, it looks like you dropped your pen on your way back to the table. Thank you. You're welcome. Okay, we'll move on to our third argument of the morning. It's in Appeal Number 232213, LoBianco v. Bonefish Grill. Okay, yep, Mr. Bild, good morning, whenever you're ready. Good morning. My name is Mitchell Bild, and along with Patrick Murphy, who could not be here today, I represent Terry and Louie LoBianco. This is a relatively straightforward case. It's an incident where Terry fell at Bonefish Grill, where she attended with her sisters, had two to three hours of dinner, and left in an ambulance. Mr. Bild, a lot seems to hinge upon this unidentified waitress that came by the table afterwards. Presumably, you tried to locate her, and I'm wondering if you could talk a bit about that. There must have been some records of who was working there and whatnot. Sure, so there were records. No one could identify the name or otherwise point to a specific person. They were able to describe who the person was, and the testimony that was elicited was that the person was wearing a Bonefish Grill uniform. And that's really the extent to which the evidence has uncovered who this person was. But I will say, to the extent that Terry identified this person as a Bonefish Grill employee, or at least who appeared to be a Bonefish Grill employee, her sisters corroborated that testimony and said that, yeah, there was a person who was wearing a Bonefish Grill outfit, and after Terry fell, while she was laying on the floor in pain, the employees said that they were told to clean that up. And the district court relied on that heavily when it agreed with Terry and Louie that there's evidence of breach here. There's evidence of breach that they had actual notice of something on the floor that should not have been there. And there's disputes in the briefing regarding what that material substance was. Terry testified that it was water, and she later was questioned further by defense counsel about whether she knew it was actually water or not. And the testimony there is simply that maybe she doesn't know exactly what that liquid was. But in my view, that doesn't matter. What matters is we have an employee. Was that what the district court was saying, that she didn't know exactly what the liquid was, or that it was speculative that she slipped on any liquid? I believe it's – so I'll say Bonefish Grill has argued in their brief that it's unclear to Terry why she fell in general. And it's based on that statement that she believed it was water and then later said, well, maybe it wasn't water. The district court relied on the fact that there was some sort of liquid there, but we're not really sure if that's what she slipped on. And that's the other caveat. The district court acknowledged that there's relatively shaky evidence that there was a liquid at all. But nonetheless, there is evidence that there was a liquid on the floor. And as a result, that liquid should not have been there. That's what the testimony was. That's what the district court recognized. And that's why the second element of negligence was satisfied. So the only issue now is whether she slipped on that liquid. And I guess I'll clarify that by saying, really, there needs to be just some evidence to support that. That's the reason that this appeal is pending. In Terry's view, there is plenty of evidence to take to a jury, for her to exercise her right to a jury trial, for them to make the decision themselves as to whether Terry slipped because of water on the floor. There's evidence that she – Isn't the point you're making, it's not – it doesn't have to be as precise as water. It could have been a Diet Coke. That's right. Right? She slipped on something that she thought was liquid. That's right. And she's been consistent with that position throughout, in no small part because after she fell, her dress was wet. That's right. And moreover, her testimony is corroborated. Her husband felt the wetness of her dress at the hospital, asked her at the hospital what that was about, and she said, it's because I fell in water. She also just testified it was slippery and wet, and that's what made me fall. That's right. And her sisters testified that after Terry fell, it was Nancy, that when she saw Terry on the ground, she looked at the floor and saw that it looked slippery, so she walked carefully over to Terry. Now, that's not to say there was additional liquid all over the floor, but just in general it supports our expert's conclusion, which is that this floor wasn't slip resistant, and so it was uniquely susceptible to falls because there is a unique susceptibility when there is liquid on the floor. It makes it more likely that a fall happened. And it's for all of those reasons that there is evidence in the record that's corroborated, that's subject to the credibility of Terry and her sisters to suggest that she did, in fact, fall because of whatever this liquid was, whether it was Diet Coke, Dr. Pepper, water, sauce. Now, and the other part is there is no dispute that Terry's testimony says that she slipped. There's no evidence in the record from Terry or anyone else that she tripped, lost her balance, fell because she was inebriated. There's evidence that she was not inebriated, even though she had a couple glasses of wine. And so the evidence is clear that the reason Terry fell is because she slipped. And so the question then is what did she slip on? And there's a lot of evidence in the record to suggest that that substance was water or some other liquid that should not have been there. It doesn't matter, though, what it was, correct? That's right. That's right. And it certainly helped. It would have helped to have that evidence of what it actually was, but that's an issue for the jury to decide. But the jury does not need to know exactly what that liquid was. What we need to know is that there was something on the floor that should not have been there, which the district court agreed was present. There's evidence of that. And that there's some evidence that Terry slipped because of that substance. That's the substance of this appeal. And I'll reserve time unless the court has any additional questions. You want to save the rest of your time and come back up? Okay, very well. Mr. Layton, good morning. Good morning. May it please the court. Good morning. My name is Chad Layton. I represent Bonefish Grill, the appellee in this case, of course. Naturally, we're dealing with a slip and fall case, and I think the key issue is whether there is sufficient evidence of proximate cause and whether the plaintiff actually stepped in water or something at the time of her fall. You're not arguing that the type of liquid matters, are you? Absolutely not. We're not taking issue. Was it water? Was it lemonade? Was it coffee? I don't think that matters. So given her testimony, I slipped, I fell, I slipped on some water, and then the follow-up question was, you testified before you never saw this liquid, but you felt it on your dress. How do you know it was actually water? And her answer, I just know it was slippery and wet. And then her husband noticed a wet spot on her dress. Why isn't that enough to create an issue of fact? Because the plaintiff, and I'm really glad you asked because, frankly, I think that's the heart of what this case is about, that testimony. As you know, we don't have any direct evidence that she stepped in water. There's nobody who says, I saw water. I have her testimony, though, that she slipped on some water. She slipped on something wet. This is why I asked you earlier. It doesn't matter what the substance is. But she is unequivocal that it was slippery and wet, and she slipped on it. She, as I recall her testimony, the reason that the plaintiff said it was wet is because she felt water on the back of her dress after she fell. In other words, she is assuming, as I read her testimony, she is assuming that she stepped in water because she felt it on the back of her dress afterwards. She described her foot movement, though. She said more than that. Whatever I stepped in, she said it was water. She had some kind of expression like, my foot moved like lightning. So she's aware of physically what happened, and the foot moving like lightning, that was just her word choice to describe this slip. And I think that testimony, if you want to assume, and I don't think it's proper for purposes of today, if you want to assume that she slipped on water, that is not enough. Well, we have to view the evidence in the light most favorable to her. In the specific testimony Judge Scudder is referring to, she said, my right foot went like lightning forward, and I did the splits. Landed on my left knee and fell over. And I think the key issue under Illinois law on testimony like that is whether or not that testimony makes it probable and not merely possible that she stepped in water. And I think that's what the heart of this case is. I think we would all agree it's certainly possible. Do me a favor, because this will help analytically. Forget the actual testimony, and now just make up, hypothesize, what would she have had to say? What words would she have had to use in her deposition to get to trial? Just make it up. I would say this. I felt water on my foot or on my shoe as I slipped. And Judge Aspen highlighted that in his opinion. He specifically said that, and I can quote it to you, because I'm sure you saw. But I guess I have a hard time understanding how that might be. I mean, let's say that you have a ‑‑ I could see if it's a big puddle, right, you'd see it. But if it's caused by just a small puddle, like when I just commonly experience when I'm walking around and I step on a small amount of water, I don't feel it. That's why I have shoes, right? So I don't quite understand what you mean by she has to feel the water on her feet. And I think the reason I said it that way is because their plaintiff's argument focuses on sensory perception. And the law in this area says you can rely on sensory perception, for example, if you feel something. And we talk about cases that you saw in the brief where somebody felt a buckle in a rug or felt another condition with their foot. So I think your point is well taken, and I completely agree with you. But the problem for the plaintiff to get past summary judgment is that puts us back in a place where we're looking at not what is probable but what is possible. And if she can't feel the water through her shoe, as you point out, and I completely agree with that, that's frankly a problem for the plaintiff. Hold on. When she makes the comment, the direct quote that Judge St. Eve read, she's not feeling the water through her shoe, but she is observing what she felt and experienced happened, right? Her foot moved like lightning. The next thing she knows, she's in the splits on the floor. So you can come up with different words. I can come up with different words. But they're just words that are describing a slip. I completely agree with that. She is just describing a slip. That does not establish that it's more probable that what she slipped on was water, and there's cases. As opposed to what? Who knows? I mean, she could have just, sorry to interrupt. Go ahead. She could have just slipped. I mean, she could have just lost her footing. But she said, I slipped on some liquid. And the reason she assumes it was liquid, and this is the key I think, is the basis for her assumption that it was liquid is because after she fell, she felt water on her dress. But if I would, after the arguments, if it were snow like we often see, and I slip on the sidewalk in front of the court while walking to lunch with Judge Lee and Judge St. Eve, and I say, I think I just slipped on the snow. And I look at my pants leg, and there's snow on it. I mean, I don't know what else I would have to say. And I think the distinction with that hypothetical versus our case is I think in your hypothetical there would be more snow here. And what we're talking about is a situation where the only evidence that we have is, at best, there's a small spot of water somewhere on the floor. Well, don't we also have the evidence that this waitress who was a Bonefish employee said, oh, you know, I told them that they should have wiped that up earlier or something to that effect. So we have that. We have the dress that was wet. We have her sisters cooperating that the Bonefish employee said that. We have her testimony. And your argument is that no reasonable jury in the world could reasonably infer from that evidence that she slipped on water. And that's a hard argument to make. Yeah, I appreciate that question. And I think certainly as I read the district court's opinion and the case law in this area, I think Judge Aspen methodically went through the different pieces of evidence that you just discussed. And the district court, as you know, concluded there just wasn't quite enough. It seems like you're asking us to view this evidence in the light most favorable to you and not to Terry at this stage, which in summary, Judge, what we can't do. I would respectfully disagree. I don't think that's what I'm asking. Because then I come back to Judge Lee's question that he just asked you. If we view it in the light most favorable to Terry, as we're required to do, I'm not sure how we can conclude that no reasonable jury would think she slipped on some liquid at the restaurant. And as I see it, the evidence that we're presented with, the evidence, obviously that's what we have to deal with, requires assumptions to be made. And I just don't think that there's enough. What I worry about is your position being tantamount to requiring a plaintiff to say, I saw a small puddle, I then stepped in it. And if that were the law, then I think what you'd be saying, well, if you saw the puddle and you stepped in it, you're comparatively negligent. I appreciate that question, and that's not what I'm saying. I'm not saying the plaintiff herself has to testify that she stepped in water. And there's other cases, the Malacena case and the Barker v. Eagle Foods case, where the plaintiffs in both of those cases described a slip. One of them said, my foot slipped on water. Another one said, my foot slipped and I went down. So the fact that somebody is just describing a slip, according to these cases, that is not enough. Both of those cases were summary judgment cases for the defense. Again, that's not all we have here. I think that the reason I highlight those cases is because that's sort of where the rubber meets the road, as I see it. And, for example, the statement, the purported statement from the Bonefish Grill employee, that does not establish where this spot of water was. It doesn't. And, as you know from the record, we have the plaintiff herself, we have the restaurant manager, who was standing over the plaintiff after she fell, as she was on the ground. We have independent witnesses who came over and looked in the area, and nobody saw any water. I mean, there's a complete absence of evidence. And, in fact, after the plaintiff was taken by the ambulance, the manager went back and looked at the floor, as he should have done, which he did, and didn't see anything there either. So I think the best evidence that we have is just because there's water on her dress afterwards doesn't establish that she actually stepped in it. And if I can briefly conclude. And, actually, I'm asking your honors to affirm what I think is a well-grounded decision by Judge Aspin. Okay. Very well, Mr. Layton. Thanks to you. Thank you. Mr. Bild? I want to start by quoting the Cabernet case, which I think clears up a lot of the discussion that was just had with Mr. Layton. The Cabernet case reads, and if your honors would indulge me, when Cabernet testified that he felt his foot catch on the mat, he was not describing an emotion but a sensory perception, in the same way that a blind person would describe something he or she was able to touch but not see. He never testified that he felt as if he tripped on a fold or that he seemed like his foot caught a buckle in the carpet, but instead unequivocally testified as to his sensory perceptions describing the tangible, physical sensation of his foot catching on a fold in the mat. That's exactly what Terry testified to, just in the context of slipping. As your honors alluded to, she's not required to actually feel the actual liquid or water, so she could confirm her belief that it was water. She believed she slipped, and then when she fell in the water, it confirmed her belief that it was in fact a liquid that she slipped on. Unless your honors have any other questions, I'll rest on our briefs. Okay. Mr. Bild, thanks to you. Again, Mr. Layton, thanks to you. We'll take the appeal under advisement.